The Honorable Samuel J. Steiner
Chapter 11
Hearing Date: March 27, 2009
Hearing Time: 9:30 a.m.
Response Date: March 20, 2009

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re:<br><br>LAWRENCE KATES,<br><br>    Debtor. | No. 09-10188-SJS<br><br>DECLARATION OF LAWRENCE KATES IN SUPPORT OF MOTION FOR ORDER APPROVING SALE OF PROPERTY FREE AND CLEAR OF LIENS |

For his Declaration, Lawrence Kates states as follows:

1. I am the Debtor in this case. I have personal knowledge of the facts set forth herein and, if called, would be competent to testify to them.

2. I filed a voluntary petition for Chapter 11 protection on January 12, 2009. Since the filing, I have continued to manage my affairs as debtor-in-possession.

3. This Chapter 11 case is both substantial and complex. As set forth in my Schedules, I own, either directly or through various legal entities, real properties valued at more than $86 million. These real estate holdings are located in multiple states and in Canada. Scheduled creditor claims in this case exceed $40 million.

4. The current crisis in the economy is imposing unprecedented challenges on all real estate markets, property valuations, marketing strategies, property sales, and financings. It is

DECLARATION OF LAWRENCE KATES IN
SUPPORT OF MOTION FOR ORDER
APPROVING SALE OF PROPERTY FREE
AND CLEAR OF LIENS -- 1
No. 09-10188-SJS

m40082-1170439.doc

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

nevertheless my expectation and intent that my Chapter 11 Plan, once proposed, will provide for the payment in full of all allowed creditor claims. The instant Motion plays a contributing role in my efforts to preserve and administer his bankruptcy estate for such payments.

5. **Property to be Sold**. By this Motion, I seek Court approval of the sale of the real property commonly known as 1262 Chartwell Crescent, Vancouver, British Columbia V7S 2P8 (the "Property"). The Property is legally described as PL 11873 BLK 45 DL CE #7 LD 37 LOT 15 AMD, EXPL 9669.

6. **Terms of the Offer and Purchase Price to be Approved/Net to the Estate**. The proposed purchaser of the Property is Dr. Sam Daher. The proposed purchase price is $1,600,000 (CDN). A copy of the fully executed Contract of Purchase and Sale is attached hereto as Exhibit A. The Contract provides for an all-cash closing on March 30, 2009 and further provides that the Buyer is entitled to possession of the Property on March 31, 2009. There are no contingencies to closing.

7. I estimate that the mortgage debt currently encumbering the Property is approximately $965,000. In addition, I believe that other costs of closing will be the payment of approximately $30,000 in unfinished construction costs and an additional $54,600 in commissions to real estate brokers. Payment of these costs will generate an immediate net cash return to the estate of approximately $500,000.

8. **Marketing Efforts and Good Faith**. I placed the Property on the market in November 2008. I engaged Mr. G. Keith Finney and RE/MAX Masters Realty as my real estate broker. The Property was originally listed for $1,950,000. That price was subsequently reduced to $1,850,000, then to $1,750,000, prior to my agreement to accept the current offer of $1,600,000. There have been no additional offers, before or since, at any price.

9. To my knowledge, the negotiations between my real estate agent and the Buyer (including the Buyer's real estate agent, Prudential Sussex Realty) have at all times been

DECLARATION OF LAWRENCE KATES IN
SUPPORT OF MOTION FOR ORDER
APPROVING SALE OF PROPERTY FREE
AND CLEAR OF LIENS -- 2
No. 09-10188-SJS
m40082-1170439.doc

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

conducted professionally, at arms-length, and in good faith. I have no prior relationship or connection whatsoever with the Buyer.

10. **Necessity of the Sale Approval**. Prompt approval of the proposed sale is essential for a variety reasons:

- I have been engaged in real estate transactions for approximately forty years and am an expert on such transactions. Given the general declining real property market, I emphatically believe that the proposed purchase price is not only fair and reasonable but is also the highest offer I am ever likely to obtain for the Property in the current economic environment. The fact that there have been no other offers for the Property supports this conclusion. As a result, if the proposed sale is not consummated, I believe that my bankruptcy estate will suffer potentially significant damage through its inability ever to close a sale at the same price.

- The Contract of Purchase provides that the Buyer is entitled to possession on March 31, 2009. If the proposed sale is not promptly approved, the Buyer can declare a breach of the Contract and terminate the sale. Such an event would be disastrous for my bankruptcy estate.

- The proposed sale will significantly further the administration of my estate and will also generate substantial net proceeds necessary to preserve and maintain other assets of the estate for the benefit of creditors.

11. I understand that Bankruptcy Code §363(f) authorizes a debtor to sell property out of the ordinary course of business "free and clear of any interest in such property of an entity other than the [debtor]," under certain conditions, including the following:

    2.    Such entity consents.

12. Here, the sole recorded security interest against the Property is held by North Shore Credit Union of 1100 Lonsdale Avenue, North Vancouver, British Columbia, V7M 2H3 (the "Bank"). The proposed sale will generate sufficient proceeds to pay the Bank's secured claim in

DECLARATION OF LAWRENCE KATES IN
SUPPORT OF MOTION FOR ORDER
APPROVING SALE OF PROPERTY FREE
AND CLEAR OF LIENS -- 3
No. 09-10188-SJS

m40082-1170439.doc

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

full at closing. As a result, I believe that no lienholders object (or will object) to the proposed sale and that the sale can therefore be approved under §363(f)(2).

Given at West Vancouver, British Columbia, this 10th day of March, 2009, under penalty of perjury under the laws of the State of Washington.

/s/ *Lawrence Kates*
Lawrence Kates

DECLARATION OF LAWRENCE KATES IN
SUPPORT OF MOTION FOR ORDER
APPROVING SALE OF PROPERTY FREE
AND CLEAR OF LIENS -- 4
No. 09-10188-SJS

m40082-1170439.doc

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599






# CONTRACT OF PURCHASE AND SALE

PREPARED BY: Prudential Sussex Realty   DATE: February 26, 2009
(BROKERAGE - PLEASE PRINT)
ADDRESS: 2397 Marine Drive   West Vancouver   PC: V7V 1K9   PHONE: 604-925-2911
PER: P. Tom Groulx   MLS® No.: V744663
(LICENSEE - PLEASE PRINT)

| SELLER: L.KATES | BUYER: S. Daher |
|---|---|
| SELLER: | BUYER: |
| ADDRESS: 1262 CHARTWELL CR | ADDRESS: 4775 Woodside Place |
| West Vancouver   PC: V7S 2P8 | West Vancouver, BC   PC: |
| PHONE: | PHONE: |
| RESIDENT OF CANADA ☐  NON-RESIDENT OF CANADA ☐ as defined under the *Income Tax Act*. | OCCUPATION: |

**PROPERTY:**

1262 CHARTWELL CR
UNIT NO.   ADDRESS OF PROPERTY

West Vancouver   V7S 2P8   009-020-217
CITY/TOWN/MUNICIPALITY   POSTAL CODE   PID

PL 11873 BLK 45 DL CE #7 LD 37 LOT 15 AMD, EXPL 9669.
LEGAL DESCRIPTION

The Buyer agrees to purchase the Property from the Seller on the following terms and subject to the following conditions:

1. **PURCHASE PRICE:** The purchase price of the Property will be _____
One Million Six Hundred Thousand
_____ DOLLARS $1,600,000.00 _____ (Purchase Price)

2. **DEPOSIT:** A deposit of $100,000.00 _____ which will form part of the Purchase Price, will be paid on the following terms:

To be deposited into an interest bearing account to the benefit of the Buyer immediately upon removal of all subjects

All monies paid pursuant to this section (Deposit) will be delivered in trust to Prudential Sussex Realty _____ and held in trust in accordance with the provisions of the *Real Estate Services Act*. In the event the Buyer fails to pay the Deposit as required by this Contract, the Seller may, at the Seller's option, terminate this Contract. The party who receives the Deposit is authorized to pay all or any portion of the Deposit to the Buyer's or Seller's conveyancer (the "Conveyancer") without further written direction of the Buyer or Seller, provided that: (a) the Conveyancer is a Lawyer or Notary; (b) such money is to be held in trust by the Conveyancer as stakeholder pursuant to the provisions of the *Real Estate Services Act* pending the completion of the transaction and not on behalf of any of the principals to the transaction; and (c) if the sale does not complete, the money should be returned to such party as stakeholder or paid into Court.

INITIALS: SD / LK

3. **TERMS AND CONDITIONS:** The purchase and sale of the Property includes the following terms and is subject to the following conditions:

see addendum

Each condition, if so indicated, is for the sole benefit of the party indicated. Unless each condition is waived or declared fulfilled by written notice given by the benefiting party to the other party on or before the date specified for each condition, this Contract will be terminated thereupon and the Deposit returnable in accordance with the *Real Estate Services Act*.

4. **COMPLETION:** The sale will be completed on March 30, yr. 2009 (Completion Date) at the appropriate Land Title Office.

5. **POSSESSION:** The Buyer will have vacant possession of the Property at 12 noon m. on March 31, yr. 2009 (Possession Date) OR, subject to the following existing tenancies, if any: vacant possession

6. **ADJUSTMENTS:** The Buyer will assume and pay all taxes, rates, local improvement assessments, fuel, utilities and other charges from, and including, the date set for adjustments, and all adjustments both incoming and outgoing of whatsoever nature will be made as of March 31, yr. 2009 (Adjustment Date).

7. **INCLUDED ITEMS:** The Purchase Price includes any buildings, improvements, fixtures, appurtenances and attachments thereto, and all blinds, awnings, screen doors and windows, curtain rods, tracks and valances, fixed mirrors, fixed carpeting, electric, plumbing, heating and air conditioning fixtures and all appurtenances and attachments thereto as viewed by the Buyer at the date of inspection, INCLUDING:

Clothes Washer/Dryer/SubZero Fridge and Freezer, Dacor Gas Stove, Microwave, Dishwashers, Swimming Pool Equipment, Burlap Wrapped Cedar trees in front driveway, 2 Garage Door Openers, 2 sets of Keys

BUT EXCLUDING: no exclusions

8. **VIEWED:** The Property and all included items will be in substantially the same condition at the Possession Date as when viewed by the Buyer on January 23, yr. 2009.

9. **TITLE:** Free and clear of all encumbrances except subsisting conditions, provisos, restrictions, exceptions and reservations, including royalties, contained in the original grant or contained in any other grant or disposition from the Crown, registered or pending restrictive covenants and rights-of-way in favour of utilities and public authorities, existing tenancies set out in Clause 5, if any, and except as otherwise set out herein.

10. **TENDER:** Tender or payment of monies by the Buyer to the Seller will be by certified cheque, bank draft, cash or Lawyer's/Notary's or real estate brokerage's trust cheque.

11. **DOCUMENTS:** All documents required to give effect to this Contract will be delivered in registrable form where necessary and will be lodged for registration in the appropriate Land Title Office by 4 pm on the Completion Date.

INITIALS

12. **TIME:** Time will be of the essence hereof, and unless the balance of the cash payment is paid and such formal agreement to pay the balance as may be necessary is entered into on or before the Completion Date, the Seller may, at the Seller's option, terminate this Contract, and, in such event, the amount paid by the Buyer will be absolutely forfeited to the Seller in accordance with the *Real Estate Services Act*, on account of damages, without prejudice to the Seller's other remedies.

13. **BUYER FINANCING:** If the Buyer is relying upon a new mortgage to finance the Purchase Price, the Buyer, while still required to pay the Purchase Price on the Completion Date, may wait to pay the Purchase Price to the Seller until after the transfer and new mortgage documents have been lodged for registration in the appropriate Land Title Office, but only if, before such lodging, the Buyer has: (a) made available for tender to the Seller that portion of the Purchase Price not secured by the new mortgage, and (b) fulfilled all the new mortgagee's conditions for funding except lodging the mortgage for registration, and (c) made available to the Seller, a Lawyer's or Notary's undertaking to pay the Purchase Price upon the lodging of the transfer and new mortgage documents and the advance by the mortgagee of the mortgage proceeds pursuant to the Canadian Bar Association (BC Branch) (Real Property Section) standard undertakings (the "CBA Standard Undertakings").

14. **CLEARING TITLE:** If the Seller has existing financial charges to be cleared from title, the Seller, while still required to clear such charges, may wait to pay and discharge existing financial charges until immediately after receipt of the Purchase Price, but in this event, the Seller agrees that payment of the Purchase Price shall be made by the Buyer's Lawyer or Notary to the Seller's Lawyer or Notary, on the CBA Standard Undertakings to pay out and discharge the financial charges, and remit the balance, if any, to the Seller.

15. **COSTS:** The Buyer will bear all costs of the conveyance and, if applicable, any costs related to arranging a mortgage and the Seller will bear all costs of clearing title.

16. **RISK:** All buildings on the Property and all other items included in the purchase and sale will be, and remain, at the risk of the Seller until 12:01 am on the Completion Date. After that time, the Property and all included items will be at the risk of the Buyer.

17. **PLURAL:** In this Contract, any reference to a party includes that party's heirs, executors, administrators, successors and assigns; singular includes plural and masculine includes feminine.

18. **REPRESENTATIONS AND WARRANTIES:** There are no representations, warranties, guarantees, promises or agreements other than those set out in this Contract and the representations contained in the Property Disclosure Statement if incorporated into and forming part of this Contract, all of which will survive the completion of the sale.

19. **PERSONAL INFORMATION:** The Buyer and the Seller hereby consent to the collection, use and disclosure by the Brokerages and by the managing broker(s), associate broker(s) and representative(s) of those Brokerages (collectively the "Licensee(s)") described in Clause 20, the real estate boards of which those Brokerages and Licensees are members and, if the Property is listed on a Multiple Listing Service®, the real estate board that operates that Multiple Listing Service®, of personal information about the Buyer and the Seller:

   A. for all purposes consistent with the transaction contemplated herein;

   B. if the Property is listed on a Multiple Listing Service®, for the purpose of the compilation, retention and publication by the real estate board that operates the Multiple Listing Service® and other real estate boards of any statistics including historical Multiple Listing Service® data for use by persons authorized to use the Multiple Listing Service® of that real estate board and other real estate boards;

   C. for enforcing codes of professional conduct and ethics for members of real estate boards; and

   D. for the purposes (and to the recipients) described in the brochure published by the British Columbia Real Estate Association entitled *Working With a REALTOR®*.


INITIALS

20. **AGENCY DISCLOSURE:** The Seller and the Buyer acknowledge having received, read and understood the brochure published by the British Columbia Real Estate Association entitled *Working With a REALTOR®* and acknowledge and confirm as follows:

    A. the Seller has an Agency relationship with

    RE/MAX Masters Realty    and    G. Keith Finney
    BROKERAGE                                 LICENSEE

    B. the Buyer has an Agency relationship with

    Prudential Sussex Realty    and    P. Tom Groulx
    BROKERAGE                                 LICENSEE

    C. the Buyer and the Seller have consented to a limited dual agency relationship with

    _____ and _____
    BROKERAGE                                 LICENSEE

    _____
    LICENSEE

    having signed a Limited Dual Agency Agreement dated _____

    If only (A) has been completed, the Buyer is acknowledging no agency relationship. If only (B) has been completed, the Seller is acknowledging no agency relationship.

21. **ACCEPTANCE IRREVOCABLE (Buyer and Seller):** The Seller and the Buyer specifically confirm that this Contract of Purchase and Sale is executed under seal. It is agreed and understood that the Seller's acceptance is irrevocable, including without limitation, during the period prior to the date specified for the Buyer to either:

    A. fulfill or waive the terms and conditions herein contained; and/or

    B. exercise any option(s) herein contained.

22. **THIS IS A LEGAL DOCUMENT. READ THIS ENTIRE DOCUMENT AND INFORMATION PAGE BEFORE YOU SIGN.**

23. **OFFER:** This offer, or counter-offer, will be open for acceptance until 8 o'clock p.m. on February 26, yr. 2009 (unless withdrawn in writing with notification to the other party of such revocation prior to notification of its acceptance), and upon acceptance of the offer, or counter-offer, by accepting in writing and notifying the other party of such acceptance, there will be a binding Contract of Purchase and Sale on the terms and conditions set forth.

    X _____    _____ *[signature: Sam Daher]*    (SEAL) S. Daher
    WITNESS              BUYER                          PRINT NAME

    X _____    _____    (SEAL) _____
    WITNESS              BUYER                          PRINT NAME

24. **ACCEPTANCE:** The Seller (a) hereby accepts the above offer and agrees to complete the sale upon the terms and conditions set out above, (b) agrees to pay a commission as per the Listing Contract, and (c) authorizes and instructs the Buyer and anyone acting on behalf of the Buyer or Seller to pay the commission out of the cash proceeds of sale and forward copies of the Seller's Statement of Adjustments to the Cooperating/Listing Brokerage, as requested, forthwith after completion.

    Seller's acceptance is dated FEBRUARY 26, yr. 2009

    X _____    _____    (SEAL) L.KATES
    WITNESS              SELLER                         PRINT NAME

    X _____    _____    (SEAL) _____
    WITNESS              SELLER                         PRINT NAME



# CONTRACT OF PURCHASE AND SALE ADDENDUM

MLS® NO.: V744663   DATE: February 26, 2009

RE: ADDRESS: 1262 CHARTWELL CR   West Vancouver   V7S 2P8
LEGAL DESCRIPTION: PL 11873 BLK 45 DL CE #7 LD 37 LOT 15 AMD, EXPL 9669.
PID: 009-020-217

FURTHER TO THE CONTRACT OF PURCHASE AND SALE DATED February 26, 2009
MADE BETWEEN S. Daher                                                                 AS BUYER, AND
L.KATES                                                                                         AS SELLER AND COVERING
THE ABOVE-MENTIONED PROPERTY, THE UNDERSIGNED HEREBY AGREE AS FOLLOWS:

Buyer is aware that there is no Property Disclosure Statement by the Seller as the Seller represents that Seller has not lived in the house. Buyer is aware that the Seller had the house renovated by a General Contractor. Buyer is aware that the house is tenanted by Seller's daughter who will vacate before Completion Date.

Subject to a new first mortgage being made available to the Buyer that is acceptable to the Buyer by March 6, 2009.

This condition is for the sole benefit of the Buyer.

Subject to the Buyer, on or before March 6, 2009 at the Buyer's expense, obtaining and approving an inspection report against any defects which reasonably may adversely affect the property's use or value. The Seller will allow access to the property for this purpose on reasonable notice.

This condition is for the sole benefit of the Buyer.

The Seller warrants that the appliances included in the purchase of this property will be in proper working order as of the Possession Date.

Subject to the Buyer on or before March 6, 2009 obtaining and approving a copy of the title search against any encumbrances. If this condition is waived or declared fulfilled, the the title search result will be incorporated into and form part of this contract and the Buyer acknowledges and accepts, despite any other provision in this contract, that upon completion the Buyer will receive title containing any non-financial charge set out in the copy of the title search results that is attached to and forms part of this contract.

This condition is for the sole benefit of the Buyer.

Buyer is aware that the renovations to the house that were completed by the Seller were done without District of West Vancouver permits. Seller agrees to arrange to have his General Contractor meet with the Buyer and/or his representative to discuss the materials and trades that were used in the renovation. Seller agrees to supply a letter to the Buyer indicating that the renovations were accomplished with licensed trades for all aspects of the project. Licensed Trades will be identified. This will be completed on or before March 6, 2009.
This condition is for the sole benefit of the Buyer.

| WITNESS | BUYER | S. Daher | PRINT NAME |
| WITNESS | BUYER |  | PRINT NAME |
| WITNESS | SELLER | L.KATES | PRINT NAME |
| WITNESS | SELLER |  | PRINT NAME |

BC2005 REV APR/06                                                                                                       COPYRIGHT - BCREA