# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In re:                                        ) No. 09-10188-SJS
                                              )
LAWRENCE KATES,                               )
                                              ) DEBTOR'S FIRST AMENDED PLAN OF
          Debtor.                             ) REORGANIZATION
                                              )
_____)

Lawrence Kates (the "Debtor") hereby proposes the following Plan of Reorganization pursuant to 11 U.S.C. §1121:

## I.  Disclosure Statement

The Debtor has filed a Disclosure Statement pursuant to 11 U.S.C. §1125 and Federal Rule of Bankruptcy Procedure 3016(b).  This Plan of Reorganization is being disseminated to creditors and equity security holders for vote after the Bankruptcy Court's approval of the information in the Disclosure Statement.  The Disclosure Statement contains useful information to assist creditors and equity security holders in making an informed judgment about how to vote on this Plan of Reorganization.  Please read the Disclosure Statement with care in evaluating the impact of this Plan of Reorganization upon your claim or interest.

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION -- 1

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

m40082-1342737.doc

## II. Definitions

A term used in this Plan of Reorganization that is not defined below and which is used in the Bankruptcy Code shall have the meaning ascribed in the Bankruptcy Code. The following terms when used in this Plan of Reorganization have the meanings specified below.

Administrative Expense: An expense of administration allowed under 11 U.S.C. §503(b) and any fees and charges due under 28 U.S.C. §1930.

Affiliated Entities: Those legal entities identified on Exhibit A attached hereto.

Allowed Claim: Any claim either:

1. In the amount and priority classification set forth in the proof of such claim that has been timely filed unless:

a. Such claim has been objected to after confirmation by the Debtor, the Plan Administrator, the Post-Confirmation Creditors Committee or other party in interest, in which case such claim shall be allowed only in the amount and classification that is authorized by the Bankruptcy Court; or

b. Such claim has been paid, withdrawn, waived or otherwise deemed satisfied in full; or

c. No amount has been specified in the proof of claim.

2. In the amount and priority classification listed by the Debtor in his bankruptcy schedules D, E and F as emended and filed with the Bankruptcy Court, unless;

a. Such claim is listed as disputed, contingent and/or unliquidated,

b. Such claim has been objected to or is objected to after confirmation by the Debtor, the Plan Administrator, the Post-Confirmation Creditors Committee or other party in interest, in which case such claim shall be allowed only on the amount and classification that is authorized by the Bankruptcy Court, or

c. Such claim has been paid, withdrawn, waived or otherwise deemed satisfied in full.

Assets: Every conceivable asset of the Debtor, all property of the Debtor's bankruptcy estate under 11 U.S.C. §541 and all claims which prior to the Effective Date could have been

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION -- 2

**GRAHAM & DUNN** pc
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

m40082-1342737 doc

asserted and/or were asserted by the Debtor, including Avoidance Actions. Assets shall not include property of the Debtor's Estate to the extent of the separate ownership interests in such property held by Ynez Kates.

Avoidance Actions: Actions or claims of the Debtor pursuant to 11 U.S.C. §§544-551 and RCW Chapters 19.40 and 23B or similar state or federal creditor/debtor law.

Bankruptcy Code: The Bankruptcy Code as amended and set forth in Title 11 of the United States Code.

Bankruptcy Court: The United States District Court for the Western District of Washington at Seattle, before which the Case is pending or any other court exercising jurisdiction over the Case in the future.

Bankruptcy Rules: The Federal Rules of Bankruptcy Procedure as supplemented by the Local Bankruptcy Rules for the Western District of Washington and any other local rules applicable to the Bankruptcy Court.

Bayside Square Plan: The First Amended Plan of Reorganization (or any subsequently amended version thereof) proposed by Bayside Square, LLC in Case No. 09-18716SJS, U.S. Bankruptcy Court for the Western District of Washington.

Case: The Debtor's bankruptcy case (Case No. 09-10188SJS).

Class: A class of claims or interests as defined in Section IV of the Plan entitled "Classification of Claims and Interests."

Convenience Class: Class 4 Creditors holding Allowed Claims of $25,000 or less or Creditors holding Allowed Claims of more than $25,000 but who elect to be treated as Class 4 Creditors.

Creditors' Committee: The Official Unsecured Creditors' Committee appointed in this case.

Confirmation Date: The date upon which an order confirming the Plan is entered by the Bankruptcy Court.

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION -- 3

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

**Creditor**: The holder of a claim as defined in Bankruptcy Code §101(10). The Debtor shall be a Creditor.

**Debtor**: Lawrence Kates.

**Disclosure Statement**: The Debtor's Disclosure Statement filed in connection with this Plan of Reorganization, as may be amended or modified in accordance with the Bankruptcy Code or order of the Bankruptcy Court.

**Disputed Claim**: A filed or scheduled claim which is listed on the Debtor's schedules as disputed or to which an objection has been filed by a party-in-interest and which has not been determined by a Final Order. For avoidance of doubt, the Debtor shall be deemed a party-in-interest.

**Distribution**: Any distribution of money or property made pursuant to this Plan.

**Effective Date**: The first business day that is 15 calendar days after the Confirmation Date or if the order confirming the Plan is stayed pending appeal, the date such stay expires and the order confirming the Plan becomes final.

**Estate**: The estate created by the commencement of the Case.

**Final Order**: An order or judgment of the Bankruptcy Court as to which the time for appeal has expired without notice of appeal having been filed or as to which any appeal therefrom has been resolved.

**HSBC Bayside Loan**: That certain loan and credit facility issued by HSBC Realty Credit Corporation (USA) in favor of Bayside Square LLC and evidenced by that certain Credit Loan Agreement dated as of July 15, 2004, including all amendments, modifications, instruments, and documents thereto.

**Liquidation Expenses**: All expenses incurred by the Debtor and/or the Plan Administrator in the performance of their duties under the Plan.

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax· (206) 340-9599

1     <u>Management Agreement</u>: That certain Agreement for Plan Administration attached
2 hereto as Exhibit B, the parties to which are the Debtor, the Plan Administrator, and the Post-
3 Confirmation Committee.

4     <u>Patent-Related Assets</u>: Assets consisting of the Debtor's interests in the patent rights
5 identified on Exhibit C attached hereto.

6     <u>Petition Date</u>: January 12, 2009, the date upon which the order for relief was entered
7 herein.

8     <u>Plan</u>: This First Amended Plan of Reorganization in its present form or as may be
9 amended or modified in accordance with the Bankruptcy Code or order of the Bankruptcy Court.

10     <u>Plan Administrator</u>: The Stapleton Group, Inc. (or such other individual or entity as may
11 be selected), as set forth in Section VIII herein.

12     <u>Post-Confirmation Committee ("PCC")</u>: The Creditors' Committee as it exists after the
13 Effective Date.

14     <u>Proceeds</u>: All funds received from the liquidation or other administration of the Assets.

15     <u>Professional Persons</u>: Persons to be compensated pursuant to §§326, 327, 328, 330,
16 and/or 1103 of the Bankruptcy Code.

17     <u>Secured Claim</u>: A claim against the Debtor that is secured as defined in 11 U.S.C. §506.

18     <u>Unsecured Claim</u>: A claim against the Debtor that is not a Secured Claim, an
19 Administrative Expense or a priority claim as described in §507(a)(3)-(8) of the Bankruptcy
20 Code.

21     **III. PAYMENT OF ADMINISTRATIVE EXPENSES**

22     Except for those administrative expenses incurred in the ordinary course of the Debtor's
23 business which have been paid pursuant to their terms and not under this Plan, each
24 Administrative Claim which is an Allowed Claim shall be paid in full on the later of: (a) the
25 Effective Date; (b) when due; (c) upon entry of a Final Order if Court approval is a precondition
26

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION -- 5

**GRAHAM & DUNN** pc
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

m40082-1342737.doc

to payment; or (d) at such times and in such amount as the holders of such claims shall agree in writing.

All quarterly fees due to the United States Trustee pursuant to 28 U.S.C. §1930(a)(6) for activity through the Effective Date will be paid in full on or before the Effective Date, as required by 11 U.S.C. §1129(a)(12). The Plan Administrator shall be responsible for timely payment of fees incurred pursuant to 28 U.SC. §1930(a)(6) from Assets of the Bankruptcy Estate. After confirmation, the Plan Administrator shall serve on the United States Trustee a monthly financial report for each month, or portion thereof, that the Case remains open. The monthly financial report shall include a statement of all disbursements made during the month, whether or not pursuant to the Plan.

## IV. CLASSIFICATION OF CLAIMS AND INTERESTS

The claims are classified as follows:

Administrative Expenses:  All administrative claims allowed pursuant to 11 U.S.C. §503(b).

Class 1:  Allowed Unsecured Claims of the types entitled to priority under 11 U.S.C. §507(a)(3)-(8).

Class 2:  The Allowed Secured Claim of Countrywide Funding (n/k/a Bank of America Home Loans) (with respect to 229 Marine Drive, Point Roberts, Washington).

Class 3:  The Allowed Secured Claim of North Shore Credit Union (with respect to 1239 Chartwell Place, West Vancouver, B.C.).

Class 4:  Creditors holding Allowed Claims of $25,000 or less or Creditors holding Allowed Claims of more than $25,000 but who elect to be treated as Class 4 Creditors; provided, however, that creditors eligible for Class 4 may elect to be treated as Class 5 creditors.

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION -- 6

m40082-1342737 doc

GRAHAM & DUNN PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

<u>Class 5</u>:  Allowed Unsecured Claims incurred by the Debtor prior to the Petition Date which are not included in any other class. [1]

<u>Class 6</u>: Parties who hold an ownership interest (*i.e.*, equity interest) in the assets of the Debtor's Estate.

## V. IMPAIRED CLASSES

Classes 2, 3, 4, 5 and 6 are impaired under the Plan.

## VI. TREATMENT OF CLAIMS

<u>Administrative Expenses</u>:  All Allowed Administrative Expenses shall be paid first from any retainers held for the claimant and then from the Assets or Proceeds in full in cash on the Effective Date unless the claimant agrees to accept deferred payments.  All Administrative Expenses which become Allowed Claims after the Effective Date shall be paid from the Assets or Proceeds in full in cash within 15 business days after allowance.  Pre-confirmation fees of Professional Persons shall only be paid after allowed by court order.  Post-confirmation fees of Professional Persons shall be paid and allowed pursuant to the provisions of Section X of the Plan.  Administrative Expense Claimants are not entitled to vote on the Plan of Reorganization.

<u>Class 1</u>:  All Allowed Claims in Class 1 shall be paid from the Assets or Proceeds in full in cash on the Effective Date; provided, however, that Allowed tax claims arising under Bankruptcy Code §507(a)(8) will be paid in full in not less than five (5) years, pursuant to Bankruptcy Code §1129(a)(9).  All Class 1 claims which become Allowed Claims after the Effective Date shall be paid from the Assets or Proceeds in full in cash within 15 business days after allowance; provided, however, that Allowed tax claims arising under Bankruptcy Code §507(a)(8) will be paid in full in not less than five (5) years, pursuant to Bankruptcy Code §1129(a)(9).  In particular, the Allowed Class 1 claim of the Internal Revenue Service (the "IRS

---

[1] For avoidance of doubt, Class 5 Claims shall include the claims of all creditors arising from the Debtor's personal guaranties of the payment obligations of the Affiliated Entities.

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION -- 7

m40082-1342737.doc

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

Claim") shall be paid as follows: a) the IRS Claim shall be paid in full; b) the IRS Claim shall include interest to be paid at the rate prescribed by 26 U.S.C. Section 6621; c) the IRS Claim shall not be discharged until paid in full; d) the IRS Claim shall include claims arising from the Debtor's capital gains and the Plan Administrator shall reserve proceeds of the sales of Estate Assets in amounts adequate to satisfy such capital gains obligations; e) the IRS Claim shall be paid at a rate of $4,356.67 per month commencing on May 12, 2010 and continuing on the 12[th] day of every month for the next 43 months thereafter until paid in full (including in the final payment all accrued but unpaid interest), provided that the IRS claim may at any time be sooner paid in such higher installment amount(s) as the Plan Administrator may elect or as may be required to ensure that payment of the IRS Claim is being treated in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the Plan (excepting payments made to Class 4 creditors); and f) in the event the reorganized Debtor defaults in his payment obligations to the IRS under the Plan and such default is not cured within thirty (30) days after notice to the Plan Administrator, the IRS may pursue any state or federal collection remedies provided by applicable law that the IRS may deem appropriate. Additionally, for purposes of clarification, the IRS' right to payment of a tax claim arising from any capital gain on the postpetition sale of Estate Assets shall be an expense of administration and not an "Allowed Class 1" claim.

Class 2 (Countrywide Funding, n/k/a Bank of America Home Loans): The Class 2 claimant's claim is secured by real property commonly known as 229 Marine Drive, Point Roberts, Washington (the "Property"). The Class 2 claimant will retain its security interests in the Property. To the extent its claim has not been satisfied prior to the Effective Date, the Class 2 claimant shall be treated as follows: 1) commencing with the Effective Date, the Debtor will make on-going monthly payments at the normal (non-default) contract rate; 2) not later than the date that is 18 months after the Effective Date the Debtor will either: a) sell the Property; b) surrender the Property to Countrywide; or c) cure and reinstate the Class 2 claimant's loan

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION -- 8

**GRAHAM & DUNN** pc
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

pursuant to Bankruptcy Code §1124; and 3) the Debtor agrees that there will be no subdivision of the Property without permission in writing from Countrywide.

Class 3 (North Shore Credit Union): To the extent its claim has not been satisfied prior to the Effective Date, the Class 3 claimant shall be paid from the Proceeds of the sale of its collateral or from the surrender to it of its collateral or from the Proceeds of non-collateral Assets, as the Plan Administrator and Post-Confirmation Committee may agree. The Class 3 claimant will receive post-Confirmation Date payments at the applicable non-default contract rate pending marketing and sale of the Class 3 claimant's collateral, which is commonly known as 1239 Chartwell, West Vancouver, British Columbia. The Class 3 claimant will retain its security interests in the Assets that constitute its collateral. The Class 3 claimant is impaired and is entitled to vote on the Plan of Reorganization.

Class 4 (Convenience Class Claims): Class 4 claimants will receive a lump sum cash payment equal to 75% of their Allowed Claims, measured as of the Petition Date, on or before that date which is six (6) months following the Effective Date. Class 4 claimants are impaired and are entitled to vote on the Plan of Reorganization.

Class 5 (General Unsecured Creditors): All Allowed Claims in Class 5 shall be paid from the Assets or Proceeds after all Allowed Administrative Expenses and Class 1 claims have been paid in full. Distributions to Class 5 claimants shall occur after Bankruptcy Court approval and in accordance with the terms of the Management Agreement. Post-Petition Date interest at the rate of 7% shall continue to accrue on the Allowed Claims of Class 5 claimants. Such post-Petition Date interest shall be calculated on the amount of such claims as measured on the Petition Date and shall not be calculated so as to constitute "interest on interest." Class 5 claimants are impaired and are entitled to vote on the Plan of Reorganization.

Class 6 (Equity Interest Holders). Equity Interest Holders shall be allowed to retain their ownership interests in Assets of the Estate, subject, however, to the prior payment of all Administrative and Class 1-5 Allowed Claims.

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION -- 9

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax· (206) 340-9599

m40082-1342737.doc

## VII. SOURCE OF FUNDS

The funds necessary to make payments on all Allowed Claims shall come from the Assets or Proceeds. Plan funding for post-Confirmation Date maintenance of the Estate Assets, operating costs, and compensation of the Plan Administrator and other retained Estate professionals will come from: 1) existing unencumbered cash on hand (approximately $3,900,000 [U.S.] and $1,000,000 [CDN]); 2) prospective sales of Assets; and 3) excess cash (if any) generated by the Estate's income producing Assets.

## VIII. MEANS FOR EXECUTION OF THE PLAN; EFFECT OF CONFIRMATION; DISCHARGE OF DEBTOR

Management Agreement: The terms of the Management Agreement are incorporated into the terms of the Plan. As established by the Management Agreement, the principal features of the liquidation program shall be as follows:

- Subject to the specific terms of the Management Agreement, the Plan Administrator shall be in charge of the liquidation of Estate Assets. The PCC shall be consulted and shall provide input to the Plan Administrator on such issues but will not control the Plan Administrator. The sale and/or abandonment of Estate Assets will require PCC consent. The PCC will select a replacement Plan Administrator if such replacement becomes necessary prior to the completion of the Plan.

- Subject to the specific terms of the Management Agreement, the Plan Administrator will market and sell the Estate's real property assets. There is no deadline for the Plan Administrator's liquidation of specific Assets but it will be the goal of the Plan to complete the bulk of the real property liquidation within approximately two years from the Effective Date. Accordingly, all of the Estate's real property Assets will immediately be placed on the market (if not already on the market), with the exception of the Debtor's residence in West Vancouver, B.C. (1239 and 1243 Chartwell). The Debtor will place 1243 Chartwell and 1239 Chartwell on the

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION -- 10

m40082-1342737.doc

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

market not later than one (1) year following the Effective Date but will not be required to place 1243 Chartwell and 1239 Chartwell on the market prior to that date.

- Concurrently with his marketing of Estate Assets, the Plan Administrator will take whatever actions he deems necessary to realize the maximum values from the Estate's interests in the Affiliated Entities, including Wood River Woods, LLC, Bayside Square, LLC, and Hillside Balboa, LLC, each of which is currently under separate Chapter 11 protection before the Bankruptcy Court. Specifically, the Plan Administrator shall fund all amounts necessary to re-instate the HSBC Bayside Loan, as set forth in the Bayside Square Plan, provided that such reinstatement amounts required from the Estate do not exceed a total of $600,000.

- The costs to the Estate of any effort(s) to generate additional Estate funds from the development or licensing of the Patent-Related Assets will be included in the budgets approved by the Plan Administrator in accordance with the Management Agreement.

- Pro-rata cash distributions to Class 5 claimants shall be initiated by sixty days from the Effective Date with a minimum initial target cash pool amount (of $1 million) as designated by the Plan Administrator. Any such distribution shall, however, leave sufficient funds remaining for other Estate purposes, including: the funding necessary to meet Wood River Woods LLC and Bayside Square LLC plan requirements; the funding of costs of Estate administration; the funding of appropriate general reserves for other Estate obligations; and the funding of reserves and/or payments necessary to preserve the value of Estate Assets, including the Estate's interests in the Affiliated Entities and the assets owned by them. Subject to the business judgment of the Plan Administrator, cash distributions to creditors may be established as monthly or quarterly periodic payments but shall in any event be set conservatively, with careful attention to the foregoing global cash reserve requirements. Notwithstanding any other provision of this Plan, all decisions to distribute cash and Estate Assets shall be subject to the business judgment of the Plan Administrator. If the initial funding to Class 5 Claimants is less

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION -- 11

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

m40082-1342737 doc

than $1 million then as soon as funds become available, as determined by the Plan Administrator, then the remaining unfunded amount will be distributed to all Class 5 Claimants.

Effect of Confirmation: On the Effective Date, but subject to the terms of the Management Agreement: (1) the Plan Administrator shall have authority to act on behalf of the Estate in the best interests of all Creditors in accordance with the terms of the Plan, and shall serve as the disbursing agent; (2) notwithstanding 11 U.S.C. §1141(b), all Assets of the Estate shall remain property of the bankruptcy Estate, and all of the Assets shall remain and/or become property of the bankruptcy Estate, until (a) all classes of Creditors have been paid in accordance with the Plan, and (b) the Case is closed pursuant to an order of the Bankruptcy Court; and (3) the automatic stay imposed by 11 U.S.C. §362 shall remain in place until the Case is closed pursuant to an order of the Bankruptcy Court, or until further order of the Bankruptcy Court.

On the Effective Date, the Stapleton Group, Inc. (or such other individual or entity as may be selected) shall be authorized to: (a) serve as and become the Plan Administrator: and (b) exercise the powers and authority vested in the Plan Administrator by the Management Agreement and this Plan.

In connection with the foregoing and pursuant to the terms of the Management Agreement, the Plan Administrator's responsibilities shall include oversight of the liquidation and reduction to money of the Assets and distribution of the Proceeds to Creditors in the priority indicated in Section VI of the Plan. Subject to the terms of the Management Agreement, the Plan Administrator shall have authority to sell any of the remaining Assets free and clear of liens and encumbrances under 11 U.S.C §363 (including §363(h)) and to abandon any of the Assets under 11 U.S.C. §554.

Subject to the terms of the Management Agreement, the Plan Administrator shall have authority to: (1) to pursue to conclusion all pending litigation matters involving the Estate and/or the Assets; and (2) to commence and manage to conclusion any bankruptcy cases or proceedings that the Plan Administrator deems necessary to protect the Estate's interest(s) in the Assets. The

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION -- 12

**GRAHAM & DUNN** pc
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Plan Administrator shall commence such bankruptcy cases or proceedings in the Bankruptcy Court, pursuant to 28 U.S.C. §1408. The Plan Administrator shall be authorized to settle such litigation and bankruptcy matters and pay related compensation and expenses and Liquidation Expenses upon motion and order from the Bankruptcy Court, with notice of such motion provided to:

a.   The United State Trustee
     The Office of the United States Trustee
     700 Stewart Street, Suite 5103
     Seattle, WA 98101

b.   The PCC and each of the creditors included in the list of the twenty largest unsecured creditors originally filed pursuant to FRBP 1007(d) by the Debtor;

c.   The Internal Revenue Service
     Special Procedures Unit
     Attn.: Mail Stop 244
     915 Second Avenue
     Seattle, WA 98174

d.   Each person who files a request for special notice with the Court, pursuant to Bankruptcy Rule 2002;

e.   The Debtor
     C/o Graham & Dunn PC
     Attn.: Mark D. Northrup
     Pier 70
     2801 Alaskan Way, Suite 300
     Seattle, WA 98121-1128.

Additionally, the Plan Administrator shall have authority to act on behalf of the Estate to pursue all Avoidance Actions, which if not otherwise released pursuant to the Plan are preserved and retained in the bankruptcy Estate. The Plan Administrator will investigate and pursue recovery of (as he/she may determine): Avoidance Actions against the Debtor's insiders (potentially including transfers to family members, as set forth in the Debtor's Statement of Financial Affairs), including but not limited to unauthorized

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION -- 13

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

postpetition transfers pursuant to 11 U.S.C. §549. Avoidance Actions against non-insiders shall be waived.

Finally, the Plan Administrator shall have authority to act on behalf of the Estate to pursue to conclusion litigation grounded in information unknown to the Debtor as of the Confirmation Date.

All pending litigation matters and claims that constitute Assets are specifically reserved pursuant to the Plan, and shall not be barred by any theory of *res judicata* based solely on confirmation of the Plan.

The failure of the Debtor to specifically list any claim, right of action, suit, proceeding or other Estate Assets in this Plan does not, and will not be deemed to, constitute a waiver or release by the Debtor or the Estate of such claim, right of action, suit, or other proceeding, and the Estate will retain the right to pursue such claims, rights of action, suits, and other proceedings. Therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit, or other proceeding upon or after the confirmation of consummation of this Plan.

Except as otherwise specifically provided in the Confirmation Order or Plan, confirmation of the Plan shall have the effect as set forth in §1141 of the Code. Property of the bankruptcy Estate shall not revest in the Debtor but, except as otherwise provided for in the Plan, shall remain in the bankruptcy Estate to be administered by the Plan Administrator pursuant to the terms of the Management Agreement.

Property of Entities: Notwithstanding anything in this Plan or in the Agreement for Plan Administration to the contrary, the property and assets owned by the Entities themselves, (as differentiated from the Manager's personal membership interests in the Entities) are not property and assets of the Manager's bankruptcy Estate. Therefore, neither the Plan nor the Agreement for

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Plan Administration (nor the automatic stay imposed by the Plan): (A) has any prohibitive effect on the ability of Entity creditors to take actions directly against the Entities or any real or personal property owned by the Entities pursuant to loan documents or security instruments executed by the Entity, and/or applicable non-bankruptcy law, or (B) invalidate, impair, limit, restrict, or otherwise affect the terms or enforceability of any existing loan documents, security instruments, agreements or contracts between an Entity and its creditors (to include but not be limited to mortgages, deeds of trust, assignments for security purposes and financing statements), or (C) give the Plan Administrator, the Post-Confirmation Committee, or the Debtor any rights or powers to demand prior or subsequent review, approval of, or consent to, any demands, actions, remedies or proceedings against any of the Entity or the Entity's real or personal property by any of the creditors thereof, or any transfers of real or personal property resulting therefrom.

Nothing contained in this Plan or in the Agreement for Plan Administration automatically or implicitly extends any of the terms and provisions of this Plan to cover, be applicable to, or protect any of the Entities or the property and assets owned by the Entities, from any actions or proceedings by any Creditor of an Entity. In the event that an Entity should seek relief in any Bankruptcy Court, any determinations respecting the applicability, modification of, or vacating the automatic stay as to the Entity or its property, and the proposal/confirmation of any plan of reorganization applicable to any such Entity or its creditors, must be adjudicated within the bankruptcy of such Entity according to usual and customary bankruptcy procedures, separate, distinct and apart from the provisions of this Plan and the Agreement for Plan Administration.

In the event the Plan Administrator files a bankruptcy on behalf of an Entity, the confirmation of this Plan and/or a vote in its favor is entirely without prejudice to the prompt objection in that bankruptcy by any creditor of the filing Entity claiming lack of authority to file without the concurrence of those authorized by the law of the state of organization of the Entity to make the filing decision.

**GRAHAM & DUNN** pc
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

Discharge of Debtor. The Debtor shall receive a discharge from any debt that arose before the Effective Date (except from any debt excepted from discharge under 11 U.S.C. §523) upon the earliest to occur of the following: 1) payment in full of Administrative Expenses and the Allowed Claims of Class 1-5 claimants; 2) sale or abandonment of substantially all Assets of the Estate; 3) the expiration of four years following the Effective Date.

## IX. PROCEDURES GOVERNING DISTRIBUTIONS

1.  Unclaimed Funds: Pursuant to 11 U.S.C. §347(b), sixty (60) days after any distribution made pursuant to the provisions of the Plan, the Plan Administrator shall send a certified letter to each claimant who has received a check which remains unpaid, informing such claimant that it has thirty (30) days in which to respond to the Plan Administrator and cash the check. If the Claimant fails to (a) respond to the certified letter and cash the check during such period, or (b) the certified letter is returned as undeliverable, the Plan Administrator shall stop payment on such check and said funds shall be returned to the Estate. From and after the date the Plan Administrator stops payment on any distribution check pursuant to the terms of this provision, the holder of the Claim on account of which such check was issued shall be entitled to no further distributions on account of the Claim and such holder's Allowed Claim shall thereupon be deemed satisfied in full.

2.  Change of Address: All distributions to creditors under the Plan shall be mailed to the address listed on the respective creditor's proof of claim (or assignee's notice of transfer), or in the absence of a proof of claim (or notice of transfer), at the address listed in the Debtor's schedules for such creditor. Any changes of address must be forwarded to the Plan Administrator [give address], and to the United States Bankruptcy Court for the Western District of Washington, 700 Stewart Street, Seattle, WA 98101 by mail; such change of address shall not take effect for the purposes of this Section IX until fifteen (15) days after the Plan Administrator and the Bankruptcy Court receives such letter advising of the address change.

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION -- 16

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax. (206) 340-9599

m40082-1342737.doc

3. *De Minimis* Distributions: No cash payment or distribution of less than $50 or of a value less than $50 shall be made by the Plan Administrator in respect of any Allowed Claims.

## X. POSTCONFIRMATION RETENTION OF PROFESSIONALS AND PROFESIONAL FEES.

Upon the Effective Date, any requirements that professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate and the Plan Administrator and PCC shall each be authorized to employ Professional Persons, including Professional Persons currently employed by the Debtor, or the Creditors' Committee, without further order of the Court.

Subsequent to the Confirmation Date, the Plan Administrator shall be authorized to pay fees and expenses incurred post-Confirmation Date by the Plan Administrator and Professional Persons retained by the Plan Administrator. Copies of the monthly invoices for these fees and expenses shall be delivered to the Plan Administrator, the Post-Confirmation Committee, and the Debtor. Expenses and fees of the Plan Administrator and his Professional Persons may be paid without further notice or approval up to the amounts of, respectively, $10,000 in fees in any given month for the Plan Administrator and $5,000 in fees in any given month for the Plan Administrator's counsel. If the fees of the Plan Administrator exceed $10,000 in any given month and if the fees of the Plan Administrator's counsel exceed $5,000 in any given month (collectively, the "Excess Fee Amounts"), the Plan Administrator shall submit the Excess Fee Amount invoices to the Post-Confirmation Committee and request that the Excess Fee Amounts be approved and paid from Estate Assets. If the Post-Confirmation Committee declines to approve the Excess Fee Amounts request, the Plan Administrator may submit the payment requests to the Bankruptcy Court for review and approval with at least ten days prior notice (and an opportunity to object) provided to the Post-Confirmation Committee and the Debtor. For cause shown, the Bankruptcy Court may revise the terms of this provision upon motion of the Plan Administrator, the Post-Confirmation Committee, or the Debtor.

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION -- 17

**GRAHAM & DUNN** pc
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

m40082-1342737.doc

## XI  CLAIMS OBJECTIONS, TREATMENT OF DISPUTED CLAIMS, AND RIGHTS AND STATUS OF EQUITY SECURITY HOLDERS

A.  Objection to Claims.  Any objection to a claim by the Plan Administrator, or Debtor, or other parties in interest must be filed on the later of (a) six months following the Effective Date of the Plan, or (b) sixty (60) days after the filing of a proof of claim pursuant to the provisions of Section XII (B) below or other claims filed subsequent to confirmation, unless the period is extended by the Bankruptcy Court for cause shown on motion filed within such original or extended objection periods.  Notice of any motion for order extending the time for filing objections to claims shall be limited to (in addition to the specific creditor(s) affected):

      a.      The United State Trustee
              The Office of the United States Trustee
              700 Stewart Street, Suite 5103
              Seattle, WA 98101

      b.      The PCC and each of the creditors included in the list of the twenty largest unsecured creditors originally filed pursuant to FRBP 1007(d) by the Debtor;

      c.      The Internal Revenue Service
              Special Procedures Unit
              Attn.: Mail Stop 244
              915 Second Avenue
              Seattle, WA 98174

      d.      Each person who files a request for special notice with the Court, pursuant to Bankruptcy Rule 2002;

      e.      The Plan Administrator.

Objections must be served in accordance with Bankruptcy Rule 3007.  Furthermore, any and all claim objections pending as of the Confirmation Date are specifically reserved by the Plan and shall not be barred by any theory of *res judicata* based solely on confirmation of the Plan.

B.  Treatment of Disputed Claims—Reserves.  Notwithstanding any provision of the Plan specifying the time for payment of distributions to holders of claims, no distribution shall be

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION -- 18

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

m40082-1342737 doc

made to the holder of any Disputed Claim until the time such Claim has been determined to be an Allowed Claim. At the time of each distribution to holders of Claims in a Class or unclassified category which contains any Disputed Claim, the Plan Administrator as disbursing agent shall reserve the amount which would have been distributed to holders of the Disputed Claims had their claims been Allowed Claims so that the timing of distributions to other creditors shall not be affected by any delay in the resolution of the Disputed Claims. Upon the allowance of any Disputed Claim, the holder shall be paid the amount which such holder would have received had its claim been an Allowed Claim on the Effective Date. Additionally, before making distributions to other creditors, the Plan Administrator shall estimate and reserve for any unpaid Administrative Claims or expected future costs of administration, including tax claims accruing prior to completion of the administration of the bankruptcy Estate.

Notwithstanding the foregoing, the Plan Administrator shall make a distribution on all undisputed portions, if any, of Disputed Claims pursuant to the relevant provisions of the Plan. Upon the allowance of the disputed portion of a Disputed Claim, the Plan Administrator shall make a distribution of the amount of the allowed portion.

C. <u>Settlement of Claims</u>. Settlement of Disputed Claims shall be approved on an *ex parte* basis if the subject settlement order is settled as a result of a filed claim objection and the settlement order is executed by the Plan Administrator. Otherwise, approval of the subject compromise agreement will require (a) notice to the Plan Administrator, and all parties entitled to special notice in the Case, and (b) a hearing, unless the Plan Administrator obtains an order from the Bankruptcy Court authorizing the particular compromise to be approved without a notice and hearing in appropriate circumstances.

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION -- 19

m40082-1342737 doc

**GRAHAM & DUNN** pc
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

## XII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A. <u>Rejected Executory Contracts and Unexpired Leases</u>. Except as provided below, any executory contract or unexpired lease not previously assumed or rejected pursuant to court order will be deemed rejected on the Effective Date. Any contracts entered into postpetition by the Debtor remain unimpaired and unaffected by this Section XII(A) rejection.

B. <u>Filing of Claims Arising from Rejection of Contract or Unexpired Lease</u>. Any claim arising from the rejection of any executory contract or unexpired lease is a Class 5 claim to the extent it is an Allowed Claim. Any party holding a claim arising from the rejection of a contract or unexpired lease pursuant to the foregoing provisions of the Plan must file a proof of claim with the Bankruptcy Court on or before thirty (30) days following the Effective Date. The failure of any party to timely file a proof of claim required hereunder will result in the disallowance of the claim.

## XIII COMPLIANCE WITH TAX REQUIREMENTS

In connection with this Plan, the Plan Administrator shall comply with all withholding and reporting requirements imposed by federal, state, local, and foreign taxing authorities except as otherwise provided by the Bankruptcy Code or order of this Court.

## XIV. UNITED STATES TRSUTEE FEES AND REPORTING REQUIREMENTS

The Plan Administrator shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. §1930(a)(6). After confirmation, the Plan Administrator shall continue to serve on the Office of the United States Trustee a monthly financial report as long as the Case remains open.

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION -- 20

m40082-1342737.doc

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

# XV. JURISDICTION OF THE BANKRUPTCY COURT

The Bankruptcy Court shall retain jurisdiction over the Debtor, the Assets, and the Proceeds until the Plan is fully consummated and an order closing the Case is entered by the Bankruptcy Court. The automatic stay provided by 11 U.S.C. §362 shall remain in full force and effect and to the extent necessary to aid in the implementation of the terms of the Plan until the Plan has been fully consummated. The Bankruptcy Court's retained jurisdiction shall give it authority to hear matters for the purpose of administering the Plan, including without limitation (including reopening the Case for the purpose of any of the following):

1. Classifying claims and reexamining claims which have been allowed for the purposes of voting on the Plan.

2. Determining the allowance or disallowance of any claims including without limitation the Plan Administrator's objections to claims.

3. Entering orders directing disbursement of the Proceeds as contemplated by the Plan.

4. Determining all questions and disputes regarding title to the Assets and determining all cause of action, controversies, disputes or conflicts between the Plan Administrator and any other party including without limitation any right of the Plan Administrator to recover assets pursuant to the provisions of the Bankruptcy Code.

5. Clarifying any ambiguity, correcting any defect, curing any omission, or reconciling any inconsistency in the Plan or the order of confirmation as may be necessary to carry out the purposes and intent of the plan.

6. Modifying or amending the Plan after confirmation.

7. Determining allowances of compensation and other Administrative Expenses.

**GRAHAM & DUNN** pc
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

8. Enforcing and interpreting the terms of the Plan and Management Agreement.

9. Providing a replacement for the Stapleton Group, Inc. (or such other individual as may be selected) as Plan Administrator should he resign or otherwise not be able to continue in such capacity.

10. Determining, clarifying, and, if necessary, supplementing the terms of the Management Agreement respecting the Plan Administrator's duties thereunder.

11. Entering a final decree and an order closing the Case.

## XVI. MISCELLANEOUS PROVISIONS

A. <u>Creditors' Committee</u>. Upon the Effective Date, the Creditors' Committee shall continue to exist and function as the Post-Confirmation Committee. The Post-Confirmation Committee and its counsel shall have standing to monitor Plan administration and participate in any post-Confirmation proceeding(s) before the Bankruptcy Court that arise from such Plan administration or the terms hereof.

B. <u>Records</u>. Following the Effective Date, the Plan Administrator shall be permitted to examine, and shall have access to, all records of the Debtor and Estate, after reasonable notice.

C. <u>Entry of Final Decree and Order Closing Case</u>. Upon completion of the distributions required under the terms of this Plan, the Plan Administrator shall be authorized to present a motion to the Court seeking, upon ten (10) days notice, entry of a final decree and an order closing this Case. Notice of any such motion shall be limited to:

 a. The United State Trustee
  The Office of the United States Trustee
  700 Stewart Street, Suite 5103
  Seattle, WA 98101

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION -- 22

m40082-1342737.doc

b.    The PCC and each of the creditors included in the list of the twenty largest unsecured creditors originally filed pursuant to FRBP 1007(d) by the Debtor;

c.    The Internal Revenue Service
Special Procedures Unit
Attn.: Mail Stop 244
915 Second Avenue
Seattle, WA 98174

d.    Each person who files a request for special notice with the Court, pursuant to Bankruptcy Rule 2002;

e.    The Debtor
C/o Graham & Dunn PC
Attn.: Mark D. Northrup
Pier 70
2801 Alaskan Way, Suite 300
Seattle, WA 98121-1128.

DATED as of this 12th day of February, 2010.


LAWRENCE KATES

*/s/ Lawrence Kates*

GRAHAM & DUNN PC

By */s/ Mark D. Northrup*
Mark D. Northrup
WSBA# 16947
Email: mnorthrup@grahamdunn.com
Attorneys for the Debtor

DEBTOR'S FIRST AMENDED PLAN OF
REORGANIZATION -- 23

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

m40082-1342737.doc

# EXHIBIT A

## Stock and interests in incorporated and unincorporated businesses.

Abode Island Holdings Ltd., a corporation,
British Columbia
100% ownership

Chartwell Crescent Properties Ltd., a corporation
British Columbia
100% ownership

Christian Valley Farms, Ltd. a corporation
British Columbia
100% ownership

Abode Services, Ltd. a corporation
British Columbia
100% ownership

Eagle Island Holdings (Two) Inc., a corporation
British Columbia
100% ownership

Eagle Island Holdings, Inc., a corporation
British Columbia
100% ownership

Baymeadows Golf Associates LLC,
Florida
100% ownership

Bayside Square LLC,
California
100% ownership

Casa Lenders Corporation,
Nevada
100% ownership

Cbay Management Corporation,
Nevada
100% ownership

Center Bay Corporation,
Nevada
100% ownership

Center Bay Management Corporation,
California, Nevada, Washington, and Oregon
100% ownership

Hillside Balboa LLC,
Nevada.
100% ownership

Hillside Financial Corp.
100% ownership

Hillside Lakeshore Corporation,
Nevada
100% ownership

Kirkland Financial Corporation,
Nevada and Washington
100% ownership

Kirkland Springs LLC,
Nevada and Washington
100% ownership

Kirkland Village LLC,
Nevada and Washington
100% ownership

Kirkland Village Manager Corporation,
Nevada
100% ownership

KSA Manager LLC,
Nevada and Washington
100% ownership

Marine Drive Properties , LLC.
Nevada and Washington
100% ownership

Marine Mercer Properties, LLC
Nevada
100% ownership

McCormick Financial Corporation,
Nevada and Arizona
100% ownership

Mercer Avenue Properties, LLC,
Nevada and Washington
100% ownership

North Region - Barcelona LLC,
Nevada
50% ownership

North Region Corporation,
Nevada and California
100% ownership

Pavilion Associates LLC,
California
100% ownership

Pavilion Inn Inc., a corporation,.
Utah
100% ownership

Pacific Hillside, Inc., a corporation,
Nevada
100% ownership

Townhomes with a View Condominium Association, a
corporation,
Oregon
Owner of interests in 193 units

UFLLC Management Corporation,
Utah and Nevada
100% ownership

Utah Buildings LLC,
Utah and Nevada
100% ownership

Utah Pet Center Corporation,
Utah
100% ownership

Wireless Detection,
Nevada and Washington
100% ownership

Wireless Register, a corporation,
Nevada and Washington
100% ownership

Wireless Vent,
Nevada and Washington
100% ownership

Wood River Woods LLC,
Oregon
100% ownership

m40082-1267649.doc

## Interests in partnerships or joint ventures.

Casa Lenders, a limited partnership,
Nevada

Kirkland Place Limited Partnership,
Nevada and Washington

McCormick Place, a limited partnership,
Nevada and Arizona

North Region Limited Partnership,
Nevada

Pacific Hillside Associates Limited Partnership,
Nevada

Pacific Hillside Investors Limited Partnership,
Nevada

University Place Limited Partnership,
Arizona

Westlake-Wilshire Equities Partnership 100% ownership,
California

m40082-1267649.doc

# EXHIBIT B

## AGREEMENT FOR PLAN ADMINISTRATION

This Agreement for Plan Administration ("Agreement") is made and entered into as of this 16th day of April, 2010, by and among: Lawrence Kates ("Manager"); the Post Confirmation-Committee (the "PCC") established by the Manager's Chapter 11 Plan of Reorganization as confirmed in the Bankruptcy Case identified below (the "Plan"); and David Stapleton, solely in his capacity as Plan Administrator pursuant to the Plan (the "PA").

### Recitals

A.     On January 11, 2009, Manager filed a Voluntary Petition under Chapter 11 of the United States Bankruptcy Code as Case No. 09-10188-SJS (the "Bankruptcy Case") in the United States Bankruptcy Court for the Western District of Washington (the "Bankruptcy Court").

B.     Assets which are subject to the Plan include all non-exempt property, real and personal, comprising assets of the Manager's bankruptcy estate (the "Estate"), including real and personal property owned by separate entities (the "Entity" or "Entities") which are in turn owned by Manager. This Agreement is intended to apply to Estate property and any of the Entities.

C.     On April 16, 2010, U.S. Bankruptcy Judge Samuel J. Steiner entered an order in the Bankruptcy Case confirming the Plan.

D.     Under the terms of the Plan, the PCC is to continue to act in an advisory role regarding management and sale of Estate property and to select a PA for the purpose of overseeing the Manager and consummating the Plan.

E.     It is the goal of the PA, Manager and the PCC to obtain the best prices reasonably possible for the property of the Estate, with the expectation that the Plan contemplates a period of two years to sell the majority of property of the Estate.

F.     On April 16, 2010 the PA was appointed.

NOW, THEREFORE, BY THIS AGREEMENT the parties wish to establish the respective rights, duties, and obligations of Manager, the PA, and the PCC in connection with the Plan.

### Agreement

1.     **Authority of PCC**. The PCC, with the consent of the Manager, will have the authority to initially select the PA, standing to move the Bankruptcy Court to discharge the PA if such termination is in the best interests of the Estate. The PCC shall have authority to select a replacement PA, subject to Bankruptcy Court approval, if the PA resigns or is discharged. Pursuant to the terms of the Plan and this Agreement, the PCC will monitor the PA's and Manager's actions and progress in the sale, administration, and/or other disposition of Estate Assets but will not control the PA. Consent of the PCC shall be required for: a) any proposed abandonment or sale of Estate assets out of the ordinary course of business; b) any sale of Entity assets out of the ordinary course of business with a value in excess of $250,000; c) any sale of

Patent-Related Assets regardless of value. PCC approval shall not be required where the sale proposed by the PA is for a cash price equal to or greater than 95% of a listed sales price previously approved by the PCC. Nothing in this Agreement shall be construed as superseding applicable bankruptcy law, including applicable Bankruptcy Court orders regarding Entities in bankruptcy.

2. **Authority of the PA.** The PA shall oversee Manager's conduct under the Plan. The PA will discuss with Manager any questions, concerns or differences of opinion with Manager which the PA may have arising from the Manager's proposed administration of Estate assets. The PA will have authority to make final decisions regarding administration of the Estate; provided, however, that the final disposition of Estate assets (such as sales or abandonment of assets) shall require Bankruptcy Court order(s) as set forth in paragraphs 4, 5, and 6, below and shall be subject to PCC approval as provided in paragraph 1.

3. **Authority of Manager.** Manager will continue to manage and administer property of the Estate and the Manager's affiliated Entities on a day-to-day basis subject to oversight of the PA. Manager will use his expertise and knowledge of the Estate properties to recommend to the PA the pricing, marketing, hiring of brokers, budgets (including budgets for capital improvements), secured debt payments, and Patent-Related Asset expenses of Estate administration, as well as recommendations for abandonment of Assets and initiation of Entity bankruptcies. The Manager may be removed or replaced by the PA; provided, however, that the Manager shall have the right to petition the Bankruptcy Court to remain employed by the Estate. In the case of such petition, the Manager shall have the burden of proof that termination was without cause. "Cause" shall include, and shall be deemed to exist upon, a determination by the Bankruptcy Court that such termination is in the best interests of the Estate.

4. **Protection of Assets from Loss to Secured Lenders.** In order to prevent any loss of Estate Assets to foreclosure or similar forfeiture, the PA with assistance of the Manager will either: 1) make such payments or other arrangements as may be necessary to bring current, cure, or pay off any loan secured by Estate Assets (including loans affecting Entity assets); or 2) cause to be filed (in the case of Entities having assets located within the United States) a voluntary petition with the U.S. Bankruptcy Court for the Western District of Washington for any entity prior to foreclosure or trustee's sale. Such cure payments and bankruptcy filings may be funded from the Sequestered Accounts established in the Plan (or applicable Court Order authorizing Manager's use of funds) or such other funds as the PA authorizes.

5. **Abandonment of Property.** The PA, with PCC approval as provided in paragraph 1, may move the Court to authorize abandonment of an Asset or to allow any Estate or Entity property to go to foreclosure, if the cost of maintaining the asset at issue exceeds the equity value which can reasonably be realized from its administration and sale.

6. **Sales/Distribution of Estate Assets.** The PA with prior input from the Manager and prior approval by the PCC shall establish the sale prices and terms of the listing of each property of the Estate and any Entity. Such pricing shall be established in such a way as to maximize the ultimate return to the Estate. Thereafter, any changes to such prices or listings may be made by the PA after input from the Manager and prior approval by the PCC. Any offers to purchase or contracts to sell Estate or Entity assets shall be entered into by the PA after any necessary PCC

approval as provided for in paragraph 1. With the exception of ordinary course of business sales, including ordinary course condominium sales, all sales of Estate Assets and assets of Entities in bankruptcies and distributions of such sales proceeds (including distributions of Estate Assets to creditors in satisfaction of Allowed Claims) must be approved by the Bankruptcy Court after notice and a hearing. Sales of assets of non-debtor Entities shall not require Bankruptcy Court approval.

7. **Monthly Reporting**. The Manager will provide monthly reports to the PA and the PCC by the 22nd day of the following month containing a full accounting of the preceding month's: (a) cash flow statements by entity/property; (b) cash basis income statements by entity/property; and (c) balance sheets by entity/property. The Manager shall also provide the PA and the PCC with copies of all purchase offers or counter offers, including relevant supporting documents, within three days of Manager's receipt thereof. The Manager shall provide such additional information as the PA and the PCC may reasonably require to keep themselves fully informed for purposes of administration of the Estate.

8. **Access to Financial Information**.

(a) The Manager and each Entity shall deliver to the PA or PCC such financial and other information concerning Manager's use(s) of the Entity cash receipts as the PA or PCC shall reasonably request from time to time.

(b) The Manager and each Entity shall deliver to the PA or PCC such financial and other information concerning the business and affairs of the Manager and each Entity as the PA or PCC shall reasonable request from time to time.

(c) Upon written request from the PA or PCC, the Manager and each Entity shall deliver to the PA or PCC evidence, satisfactory to the PCC, that the Manager and Entity assets (including, without limitation, real property assets) are insured for the full replacement value thereof, and that all insurance are maintained in full force and effect.

(d) The Manager and each Entity shall consent and permit the PA or PCC and any authorized representatives designated by the PA or PCC (including, without limitation, PCC members or the PA's financial advisors, auditors, appraisers, construction advisor, patent advisors, and forensic advisors) to visit and inspect the offices, tangible assets, intangible assets, and real property assets of the Manager and each Entity, and to view and inspect all financial and accounting records, including without limitation contracts, and records of legal proceedings, to make copies and take extracts therefrom, and to discuss any of the Manager's or any Entity's affairs, finances and business with the Manager at such reasonable times during normal business hours and as often as may be reasonably requested.

9. **Compensation for Management**. For a period of one year from theEffective Date of the Plan, the Manager will receive as management compensation a distribution of Estate funds of $25,000 (US) per month and will thereafter receive such management compensation as agreed by the Manager, PA and PCC. These distributions and all post-Effective Date income (if any; the "Non-Related Income") received by the Manager shall not be deemed to be property of the

Estate regardless of 11 U.S.C. §1115, provided that the Non-Related Income in no way arises from, or is related to, Assets of the Estate. The Manager will be responsible for all expenses related to his principal residence (as described in Section VIII of the Plan), including his spouse's half of the principal residence property taxes; provided, however, that Estate funds shall be used to pay Manager's half of the principal residence property taxes. Manager will receive no commission from the sale of Estate property. Manager shall be reimbursed from Estate funds for out-of-pocket expenses reasonably incurred by Manager in his management of Estate assets and approved by the PA.

10.    **Compensation for PA.** The PA shall be compensated from the Estate on the terms and at the rates to which the PCC, Manager and the PA have agreed, which rates are appended as Exhibit "A" to this Agreement. Changes to such compensation terms and rates shall be subject to Bankruptcy Court approval. Subsequent to the Confirmation Date, the Plan Administrator shall be authorized to pay fees and expenses incurred post-Confirmation Date by the Plan Administrator and Professional Persons retained by the Plan Administrator. Copies of the monthly invoices for these fees and expenses shall be delivered to the Plan Administrator, the Post-Confirmation Committee, and the Debtor. Expenses and fees of the Plan Administrator and his Professional Persons may be paid without further notice or approval up to the amounts of, respectively, $10,000 in fees in any given month for the Plan Administrator and $5,000 in fees in any given month for the Plan Administrator's counsel. If the fees of the Plan Administrator exceed $10,000 in any given month or if the fees of the Plan Administrator's counsel exceed $5,000 in any given month (collectively, the "Excess Fee Amounts"), the Plan Administrator shall submit the Excess Fee Amount invoices to the Chairperson of the Post-Confirmation Committee and request that the Excess Fee Amounts be approved and paid from Estate Assets. If the Chairperson of the Post-Confirmation Committee fails to object within seven business days of receipt, the Plan Administrator may pay the fees as requested. If the Chairperson declines to approve the Excess Fee Amounts request, the Plan Administrator may submit the payment requests to the Bankruptcy Court for review and approval with at least ten days prior notice (and an opportunity to object) provided to the Post-Confirmation Committee and the Debtor. For cause shown, the Bankruptcy Court may revise the terms of this provision upon motion of the Plan Administrator, the Post-Confirmation Committee, or the Debtor.

11.    **Conflict with Plan.** Capitalized terms (if any) in this Agreement that are not defined shall have the same meaning as in the Plan. In the event of any conflict between the provisions of this Agreement and the Plan, the Plan shall govern the conduct of the parties.

12.    **Termination/Modification.** This Agreement may only be modified or terminated by: a) unanimous consent of the Manager, PA, and PCC; or b) order of the Bankruptcy Court.

13.    **Successors.** The terms of this Agreement shall be binding on any successor(s) or assign(s) of the Manager, PA, and PCC.

14.    **Continuing Jurisdiction of the Bankruptcy Court.** Consistent with the terms of the Plan, the Bankruptcy Court shall have continuing jurisdiction over the Estate, the Plan, and the parties' obligations under this Agreement. The Manager, PA, and PCC may seek guidance, orders or other determinations by the Bankruptcy Court if such party believes it is necessary or desirable for the preservation of the Estate.

15. **Estate Funds.** Following the Confirmation Date, Estate funds on deposit in the trust account of Graham & Dunn PC (U.S. funds) and in the Debtor's sequestered account at VanCity Savings Credit Union at 898 West Pender Street, Vancouver, British Columbia (Canadian funds) shall remain on deposit. Disbursement of Estate funds or transfer to other bank accounts of the Estate shall require the prior written or electronically transmitted consent of both the Plan Administrator and the Debtor or court order.

**Manager**

_____
    Lawrence Kates


**Post Confirmation Committee**

By_____
       Chairman


**Plan Administrator**

The Stapleton Group, Inc.

By_____
   David Stapleton

# EXHIBIT A



STAPLETON GROUP

*Effective January 1, 2009:*

### SCHEDULE OF HOURLY RATES BY POSITION*

| | |
|---|---|
| Principal / Receiver | $275 |
| Managing Director | $250 |
| Director | $200 |
| Senior Accountant | $175 |
| Associate Director | $150 |
| Staff Accountant | $125 |
| Clerical | $ 75 |

### REIMBURSABLE COSTS**

| | |
|---|---|
| Postage | At cost |
| Photocopies | $.12 per copy |
| Fax - Outgoing | $1.00 per page |
| Fax - Incoming | No charge |
| Messenger/Delivery | At cost |
| Court Filing Service | At cost |
| Telephone | At cost |
| Bond | At cost |
| Travel, Meals & Expenses | At cost |

\*    *Rates for specific personnel may vary slightly from the above based on experience levels, but will not exceed these values for the given category of work performed.*

\*\*   *Other direct costs we incur in connection with our services, such as outside attorneys, accountants and other professionals, may be reimbursable based on the terms of our agreement.*

515 South Flower Street, 36th Floor / Los Angeles, CA 90071 / 213.236.3597 tel / 213.236.3501 fax / stapletoninc.com

# EXHIBIT C

## Patents, copyrights, and other intellectual property.

Wireless Repeater for Sensor System
US Granted Patent
# 7,042,352

Multi-Zone Sprinkler System with Moisture
Sensors and Configurable Spray Pattern
US Granted Patent
# 7,168,632

Method and Apparatus for Monitoring Air-
Exchange Evaporation in a Refrigerant-
Cycle System
US Granted Patent
# 7,201,006

Wireless Sensor System
US Granted Patent
# 7,102,505

Wireless Sensor Monitoring Unit
US Granted Patent
# 7,102,404

Wireless Sensor Unit
US Granted Patent
# 7,142,107

Method and Apparatus for Monitoring a
Condenser Unit in a Refrigerant-Cycle
System
US Granted Patent
# 7,114,343

Method and Apparatus for Detecting
Moisture in Building Materials
US Granted Patent
# 7,142,123

Zone Thermostat for Zone Heating and
Cooling
US Granted Patent
# 7,156,316

System and Method for Zone Heating and
Cooling
US Granted Patent
# 7,163,156

Electronically-Controlled Register Vent for
Zone Heating and Cooling
US Granted Patent
# 7,168,627

Repeater Unit
US Granted Patent
# 7,199,701

Method and Apparatus for Detecting Water
Leaks
US Granted Patent
# 7,218,237

System and Method for Utility Metering and
Leak Detection
US Granted Patent
# 7,228,726 B2

Programmed Wireless Sensor System
US Granted Patent
# 7,230,528

m40082-1267650.doc

Air Filter Monitoring System
US Granted Patent
# 7,244,294

Method and Apparatus for Monitoring
Refrigerant-Cycle Systems
US Granted Patent
# 7,275,377

System and Method for Pest Detection
US Granted Patent
# 7,286,056

System and Method for Wearable
Electronics
US Granted Patent
# 7,299,034

System and Method for Computer-
Controlled Animal Toy
US Granted Patent
# 7,328,671

Intelligent Thermostat System for
Monitoring a Refrigerant-Cycle Apparatus
US Granted Patent
# 7,331,187

System and Method for Variable Threshold
Sensor
US Granted Patent
# 7,336,168 B2

Intelligent Thermostat System for Load
Monitoring a Refrigerant-Cycle Apparatus
US Granted Patent
# 7,343,751

Multi-Zone Sprinkler System with Moisture
Sensors and Configurable Spray Pattern
US Granted Patent
# 7,347,384

Management and Assistance System for the
Deaf
US Granted Patent
# 7,356,473

System and Method for Monitoring Food
US Granted Patent
# 7,372,003

System and Method for Computer-
Controlled Pet Water Dispenser
US Granted Patent
# 7,380,518

Motorized Window Shade System
US Granted Patent
# 7,389,806

Conformal Repeater Unit
US Granted Patent
# 7,403,097

Wireless Sensor Unit
US Granted Patent
# 7,411,494

System and Method for Intruder Detection
US Granted Patent
# 7,411,497

System and Method for Utility Metering and
Leak Detection
US Granted Patent
# 7,412,876

Method and Apparatus for Loan Reduction
in an Electric Power System
US Granted Patent
# 7,424,343

Camera System for Canines, Felines, or
Other Animals
US Granted Patent
# 7,424,867

Training Guidance System for Canines,
Felines, or Other Animals
US Granted Patent
# 7,434,541

m40082-1267650 doc

System and Method for Zone Heating and
Cooling
US Granted Patent
# 7,455,237

Conformal Repearter Unit
US Granted Patent
# 7,460,006

Zone Thermostat for Zone Heating and
Cooling
US Granted Patent
# 7,455,236

Touch-Screen Remote Control for Multi-
media Equipment
US Granted Patent
# 72455461,343

Method and Apparatus for Monitoring a
Calibrated Condenser Unit in a Refrigerant-
Cycle System
US Granted Patent
# 7,469,546

Repeater Unit - International
Australian Innovation Patent No.
2006100421

Shoe Watch - Canada
Registration # 119241 -Canada

Shoe Watch - European
Registration Nos.
000662119-0001 to 0030

Shoe Watch - India
Patent # 10885
Design No. 208107

Shoe Watch - India
Patent # 10936
Design No. 208108

Shoe Watch - India
Patent # 10937
Design No. 208109

Shoe Watch - India
Patent # 10938
Design No. 208110

Shoe Watch - India
Patent # 10940
Design No. 208111

Shoe Watch - India
Patent # 10939
Design No. 208112

Shoe Watch - India
Patent # 10941
Design No. 208113

Shoe Watch - India
Patent # 10942
Design No. 208114

Shoe Watch - India
Patent # 10884
Design No. 208115

Shoe Watch - India
Patent # 10884
Design No. 208116

Shoe Watch - India
Patent # 10884
Design No. 208117

Shoe Watch - India
Patent # 10884
Design No. 208118

Shoe Watch - India
Patent # 10884
Design No. 208119

Shoe Watch - India
Patent # 10884
Design No. 208120

Shoe Watch - India
Patent # 10948
Design No. 208121

m40082-1267650 doc

Shoe Watch - India
Patent # 10949
Design No. 208123

Shoe Watch - India
Patent # 10919
Design No. 208124

Shoe Watch - India
Patent # 10920
Design No. 208125

Shoe Watch - India
Patent # 10950
Design No. 208126

Shoe Watch - India
Patent # 10951
Design No. 208127

Shoe Watch - India
Patent # 10918
Design No. 208128

Shoe Watch - India
Patent # 10921
Design No. 208129

Shoe Watch - India
Patent # 10922
Design No. 208130

Shoe Watch - India
Patent # 10923
Design No. 208131

Shoe Watch - India
Patent # 10924
Design No. 208132

Shoe Watch - India
Patent # 10925
Design No  208133

Shoe Watch - India
Patent # 10926
Design No. 208134

Shoe Watch - India
Patent # 10927
Design No. 208135

Shoe Watch - India
Patent # 10928
Design No. 208136

Shoe Watch - India
Patent # 10929
Design No. 208137

Shoe Watch - China
Design No. ZL
200730002035.X

m40082-1267650.doc