The Honorable Samuel J. Steiner
Chapter 11
Hearing Date: May 14, 2010
Hearing Time: 10:00 a.m.
Response Date: May 7, 2010

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In re:

LAWRENCE KATES,

    Debtor.

In re:

HILLSIDE BALBOA, LLC

    Debtor.

No. 09-10188-SJS

No. 09-17084-SJS

STIPLULATED ORDER APPROVING APPOINTMENT OF PLAN ADMINSTRATOR

THIS MATTER having come before the Court upon the motion of the reorganized Debtor, Lawrence Kates, and the stipulation of the reorganized Debtor and the undersigned parties in interest for appointment of Stapleton Group, Inc. as the Plan Administrator, as required under the Debtor's Amended Plan confirmed by this Court's April 16, 2010 Order Confirming Plan (the "Confirmation Order"; Dkt. #279), and pursuant to paragraph 10 of the Confirmation Order authorizing the Plan Administrator to seek approval of the terms for its appointment; now, therefore, it is hereby

ORDERED that Stapleton Group, Inc. shall serve as the Plan Administrator, subject to: further order of the Court and the terms and conditions of the Amended Plan; the Agreement for Plan Administration; and the Supplemental Terms and Conditions for Engagement of Stapleton

ORDER APPOINTING PLAN
ADMINISTRATOR -- 1

No. 09-10188-SJS

GRAHAM & DUNN PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

m40082-1375214.doc Case 09-10188-SJS    Doc 288    Filed 05/13/10    Entered 05/13/10 10:59:03    Page 1 of 8

Group, Inc. as Plan Administrator of the Chapter 11 Estate of Lawrence Kates, which Supplemental Terms and Conditions are attached hereto as Exhibit A and are hereby approved.

DATED this _____ day of May, 2010.

/s/ Samuel J. Steiner
**United States Bankruptcy Judge**
(Dated as of Entered on Docket date above)

Presented by:

GRAHAM & DUNN PC

By /s/Mark D. Northrup
Mark D. Northrup
WSBA# 16947
Email: mnorthrup@grahamdunn.com
Attorneys for Lawrence Kates, Reorganized Debtor and Manager

**STIPULATED AND AGREED:**

GRAHAM & DUNN PC

By /s/Mark D. Northrup
Mark D. Northrup
WSBA# 16947
Email: mnorthrup@grahamdunn.com
Attorneys for Lawrence Kates, Reorganized Debtor and Manager

LANE POWELL PC

By /s/ Bruce W. Leaverton
    Bruce W. Leaverton, WSBA No. 15329
    Attorneys for Stapleton Group, Inc., Plan Administrator

K&L GATES LLP

By /s/ Marc Barreca
    Marc Barreca, WSBA #13412
    Attorneys for the Post Confirmation Committee

ORDER APPOINTING PLAN
ADMINISTRATOR -- 2

No. 09-10188-SJS

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

# EXHIBIT A

# Supplemental Terms and Conditions for Engagement of Stapleton Group, Inc. as Plan Administrator of the Chapter 11 Estate of Lawrence Kates

Pursuant to Article VIII of the Chapter 11 Amended Plan of Reorganization (the "Kates Plan") of Lawrence Kates ("Kates") in Case No. 09-10188-SJS, pending before the United States Bankruptcy Court for the Western District of Washington (the "Bankruptcy Court"), Stapleton Group, Inc. ("Stapleton") is appointed as the "Plan Administrator," as defined in the Kates Plan. The governing terms and conditions of Stapleton's engagement as Plan Administrator are as set forth in the Kates Plan, that certain Agreement for Plan Administration (the "Management Agreement"), and by the following supplemental terms and conditions (the "Supplemental Terms"), each of which is approved by Bankruptcy Court's Order of April 16, 2010 (the "Confirmation Order"), confirming the Kates Plan. In the event of any conflict between these Supplemental Terms and the terms and conditions set forth in the Confirmation Order, the Kates Plan or in the Management Agreement, the Confirmation Order, Kates Plan and Management Agreement shall control. Unless otherwise defined herein, capitalized terms shall have the same meaning as in the Kates Plan.

## Terms and Conditions of Engagement

1. **Effective Date of Plan Administrator's Retention**. As provided in the Confirmation Order, the the retention of Stapleton (and David Stapleton, as its president) to serve as the Plan Administrator, with all of the powers and duties set forth in the Kates Plan, isthe same date as entry of the Bankruptcy Court's order approving these Supplemental Terms and Conditions. The Plan Administrator is an independent contractor and is not an employee of the Post Confirmation Committee or the Kates Estate.

2. **Effective Date of Manager's Retention.** The date of the retention of Lawrence Kates to serve as the Manager under the Management Agreement, with all of the powers and duties set forth in the Management Agreement, are the same date as entry of the Bankruptcy Court's order approving these Supplemental Terms and Conditions. The Manager is an independent contractor and is not an employee of the Plan Administrator, the Post Confirmation Committee or the Kates Estate.

3. **Indeminfication and Hold Harmless.** As part of the consideration for the agreement of Stapleton to serve as Plan Administrator, the Kates Estate shall indemnify and hold harmless David Stapleton, Stapleton, its officers, directors, agents and employees any successors and assigns (each, an "Indemnified Party") to the fullest extent lawful from any and all claims, liabilities, losses, damages and expenses (or actions in respect thereof), as incurred, related to or arising out of or in connection with or related to this engagement, including, without limitation, any and all of such Indemnified Parties' reasonable expenses incurred in connection with investigating, preparing, defending or settling any action or claim arising from or relating to such liabilities, including all of such Indemnified Parties' legal fees and expenses; provided, however, that the Kates Estate shall not be responsible for any losses, claims, damages, liabilities or expenses of any Indemnified Parties to the extent, and only to the extent, that it is finally judicially determined that they are due primarily to such Indemnified Party's bad faith, willful misconduct or gross negligence. The indemnity and expense reimbursement obligations set forth

herein (i) shall be in addition to any liability the Kates Estate may have to Stapleton at common law or otherwise, (ii) shall survive the expiration of Stapleton's engagement hereunder, (iii) shall apply to any modification of Stapleton's' engagement hereunder and shall remain in full force and effect following the completion or termination of the engagement as amended or modified, and (iv) shall be binding on any successor or assign of the Kates Estate and its successors or assigns.

4. **Hazardous Materials.** Unless otherwise ordered by the Bankruptcy Court, the Plan Administrator is not obligated to undertake, and will have no liability for any remediation or cleanup with respect to hazardous materials presently existing under, on or about any Real Property Assets or other real property used, occupied or operated by Kates Estate or the Debtor. Although the Plan Adminstrator has no responsibility for clean up or remediation of hazardous materials, in the event there is a reasonable ability to recover any equity which may exist in such property despite the existence of such hazardous materials, the Plan Adminstrator shall pursue reasonable steps to recover it before abandoning such property.

5. **Insurance Coverage.** The Plan Administrator is authorized to review all existing insurance coverage with respect to the Estate Assets and to procure and/or maintain such insurance as the Plan Administrator deems necessary to preserve and protect the Estate Assets and to protect the Plan Adminstrator against liability in the performance of its duties as Plan Administrator.

6. **Quasi-Judicial Immunity.** The Plan Admistrator shall have the same quasi-judicial immunity from suit as that of a Chapter 11 trustee appointed under Section 1104 of the Bankruptcy Code. No obligation incurred by the Plan Administrator in the good faith performance of the Plan Administrator's duties, whether pursuant to contract, by reason of any tort, or otherwise, shall be the Plan Administrator's personal obligation. The recourse of any person or entity to whom the Plan Administrator becomes obligated in the good faith performance of the Plan Administrator's duties shall be solely against the Estate Assets. The terms of this Section 7 shall control over any other terms or provisions of the Plan, the Confirmation Order or this Supplement.

7. **Independent Contractor.** Stapleton is an independent contractor and accordingly, its retention as Plan Administrator does not constitute an employment agreement. No one on behalf of any Stapleton Party (as defined below), nor any employees, agents, or independent contractors thereof, shall be considered to be a director, officer, member, manager, partner, control person, employee, representative, agent, or insider of the Kates Estate or any of its affiliates, unless expressly agreed to in a writing signed by Stapleton. As an independent contractor, Stapleton will have exclusive control over the management and operation of Stapleton personnel, including hiring and paying the wages or other compensation of its personnel. Unless expressly provided otherwise, the Stapleton personnel that provide services to the Kates Estate in connection with its role as Plan Administrator may also provide services to other past, present or future clients in connection with unrelated matters. In addition, Stapleton may utilize the services of its own employees or services of qualified independent contractors to assist in the performance of its duties as Plan Administrator.

2

8. **Record Keeping.** The Plan Administrator shall maintain such accounting, bookkeeping and record-keeping systems as are currently in place with respect to the Kates Estate.

9. **Plan Administrator's Reporting.** Until dissolution of the Plan Administratorship, the Plan Administrator shall file with the Court and serve upon the PCC and Kates a quarterly report, provided in an appropriate format summarizing the Plan Administrator's activities and any dispositions of Estate Assets during the preceding quarter. The Plan Administrator's reports and other services to the Kates Estate may include the preparation of plans and next steps, projections, and other forward-looking statements. The Kates Estate acknowledges that numerous factors may affect the actual financial and operational results, and that these results may materially and adversely differ from the plans and next steps and projections prepared, in whole or in part, by Stapleton. The Kates Estate acknowledges that in rendering its services under the Agreement, and subject to its duty to generally investigate matters reflected in the books and records of the Debtor and material information provided to Plan Administrator with respect to the Kates Estate, Stapleton will be using and relying upon the information provided by the PCC, the Debtor, his affiliates, their directors, officers, employees, representatives and agents. In its discretion, Stapleton may (but is not required to) independently verify as to the reliability, accuracy or completeness of any such material information, in addition to the Plan Administrator's reasonable investigation of the Kates Estate assets and liabilities. However, in no event shall Stapleton incur personal liability to the Kates Estate, the PCC or any other individual or entity based upon its reasonable and good faith reliance on such information.

10. **Limitations on Use of Plan Administrator's Information.** The Kates Estate acknowledges that all information, whether written or oral, created, prepared, or compiled by Stapleton in connection with the Agreement is intended solely for the benefit and use of the Kates Estate. Except such information as may be necessary or appropriate to disclose to creditors of the estate by the PCC and which is not otherwise designated as confidential by the Plan Administrator, no other individual or entity shall be entitled to rely on such information for any purpose. The Kates Estate, the PCC and Debtor shall not reproduce, disseminated, quote or refer to such information at any time or in any manner other than to the parties in interest in the Kates Chapter 11, their boards, officers, employees, representatives, attorneys, and other agents who have a need to receive such information, except upon Stapleton's prior written consent. Without limiting the foregoing, except as required by applicable law, including the rules, statutes and orders applicable to the Kates Estate, the Debtor, PPC and Kates shall not (and shall not authorize any other individual or entity to) use Stapleton's name or to make available to third parties any information created, prepared, or compiled by Stapleton for any reason, including obtaining or extending credit, offering or selling securities or other assets, or in any representations to third parties without Stapleton's prior written consent. It is also expressly agreed that notwithstanding the above restrictions upon the dissemination and use of information and work product, Stapleton shall have no responsibility or liability relating directly or indirectly to such disclosure (whether authorized or unauthorized) by the Kates Estate, the PCC or Kates concerning any information created, prepared, or compiled, in whole or in part, by Stapleton as Plan Administrator, which may be disclosed only after prior written approval by Stapleton or as required by applicable law, or regulatory or administrative process, including stock exchange rules or the rules, statutes and orders applicable to the Kates Estate. The foregoing provisions

shall not be construed or interpreted to prohibit references to Stapleton's engagement in required public filings or court documents.

**11. Reimbursement of Plan Administrator's Enforcement Costs.** The Kates Estate shall pay all costs and expenses, including attorneys' fees and expenses, incurred by Stapleton, to enforce the terms and conditions of its appointment as Plan Administrator, including, but not limited to, the indemnity provisions above. This obligation to pay Stapleton's attorneys' fees and expenses shall apply whether such fees and expenses are incurred during trial or appeal, or in arbitration, a bankruptcy case, or otherwise.

**12. Termination, Voluntary Resignation and Discharge.** As provided in the Management Agreement, Stapleton may also be terminated and discharged as Plan Administrator for cause by the PCC, subject to Bankruptcy Court approval, upon a showing such discharge is in the best interests of the Kates Estate. Upon distribution or disposition of all of the Estate Assets, or the completion of the Plan Administrator's duties with respect to the Estate Assets, the Plan Administrator shall move the Court to be discharged. The Plan Administrator shall file a final report and accounting setting forth all receipts and disbursements of the Kates Estate which shall be annexed to the petition for discharge and filed with the Bankruptcy Court. Upon approval of the final report, the court shall discharge the Plan Administrator. The Plan Administrator's discharge releases the Plan Administrator from any further duties and responsibilities as Plan Administrator. Stapleton may voluntarily resign and be discharged from his duties as Plan Administrator at any time upon 45 days prior written notice to the PCC and the Debtor and without the necessity of an order of the Bankruptcy Court.

**13. Retention of Professional Persons.** Without the necessity of Bankruptcy Court approval, the Plan Administrator, in the performance of the Plan Administrator's duties, may retain such professional persons as the Plan Administrator deems appropriate, in connection with the Plan Administrator's duties under the Plan and Management Agreement. In accordance with the Confirmation Order, all such persons, including any persons who may also be directors, officers or employees, shall be compensated solely from the Estate Assets and the Plan Admistrator shall not be liable for such compensation. Such persons shall be subject to the management and direction of the Plan Administrator in connection with their performance of any duties associated with such employment by the Plan Administrator. The Plan Administrator shall be free at all times to terminate the employ of any such person.

**14. Employment of Non-Professional Persons.** The Plan Administrator may employ such persons as the Plan Administrator deems appropriate in connection with the Plan Administrator's duties under the Plan and Management Agreement. All such persons, including any persons who may also be directors, officers or employees, shall be compensated soleley from the Estate Assets and the Plan Admistrator shall not be liable for such compensation. Such persons shall be subject to the management and direction of the Plan Administrator in connection with their performance of any duties associated with such employment by the Plan Administrator. The Plan Administrator shall be free at all times to terminate the employ of any such person.

4

15. **Cooperation of Debtor.** The Debtor, the Debtor's affiliates and their officers, members, managers, contractors, employees, agents, accountants and attorneys, shall cooperate with the Plan Administrator in connection with the Plan Administrator's assumption and performance of the Plan Administrator's duties, so as to enable the Plan Administrator to assume and perform the Plan Administrator's duties without jeopardy to the Estate Assets. The Debtor, the Debtor's affiliates and their members, officers, managers, contractors, employees, agents, accountants and attorneys shall provide the Plan Administrator promptly upon request with all documents and records (including but not limited to financial records, applications, rent rolls, leasing records, plans, specifications, permits, contracts, and drawings) and all information and with access to all Estate Assets and all employees of the Debtor's affiliates, which the Plan Administrator at any time may request. The Debtor shall notify Stapleton if he learns subsequently that any information he has filed with the Bankruptcy Court or provided or made available to Stapleton in accordance with the Management Agreement is incorrect, inaccurate, or otherwise should not be relied upon.

16. **Retention of Jurisdiction.** The Bankruptcy Court shall retain jurisdiction to resolve any claims or disputes concerning, relating to, or arising out of Stapleton's acts or omissions as Plan Administrator. If the Plan Administrator is at any time uncertain as to the scope of the Plan Administrator's authority or as to any matter affecting or relating to the performance of the Plan Administrator's duties, the Plan Administrator shall be free to seek and obtain instructions from the Bankruptcy Court with respect to such matters upon motion and notice to the PCC, Kates and U.S. Trustee.